PREFERRED REAL ESTATE
INVESTMENTS, LLC,

                Plaintiff,

    vs.

LUCENT TECHNOLOGIES, INC. and
LTI NJ FINANCE LLC,

                Defendants.

LUCENT TECHNOLOGIES, INC. and
LTI NJ FINANCE LLC,

              Third-Party
              Plaintiff,

    v.

PREFERRED REAL ESTATE
INVESTMENTS, LLC, formerly
known as PREFERRED REAL ESTATE
INVESTORS, LLC, PREFERRED
UNLIMITED INC., formerly known
as PREFERRED REAL ESTATE
INVESTMENTS, INC., PREFERRED
UNLIMITED OF HOLMDEL LP, and
PREFERRED UNLIMITED CRAWFORDS
CORNER ROAD, LP,

              Third-Party
              Defendants.

Civil Action No. 07-05374 (DMC) (MF)

***Document Filed Electronically.***

Return Date: December 1, 2008

***ORAL ARGUMENT REQUESTED***

---

## BRIEF IN OPPOSITION TO THIRD-PARTY DEFENDANTS'
## MOTION TO DISMISS

---

                Frederick Alworth
                William P. Deni, Jr.
                GIBBONS P.C.
                One Gateway Center
                Newark, New Jersey 07102-5310
                (973) 596-4500
                Attorneys for Defendants/Third
                Party Plaintiffs

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................... ii

PRELIMINARY STATEMENT ......................................... 1

STATEMENT OF RELEVANT FACTS ................................... 3

    A.   The Preferred Entities Were Intimately Involved In The Sale And Purchase Of The Property ........... 3

    B.   Preferred Breaches The Purchase Agreement By Failing To Close On The Purchase Of The Property Due To Its Inability To Obtain Satisfactory Financing ........................................... 6

    C.   Preferred Files A Complaint To Obscure Its Own Breach Of The Purchase Agreement ................... 8

LEGAL ARGUMENT ............................................... 9

POINT I ..................................................... 10

    LUCENT HAS ASSERTED DIRECT CLAIMS AGAINST THE PREFERRED ENTITIES ARISING OUT OF THEIR CONTRACTUAL OBLIGATIONS TO LUCENT ..................................... 10

        A.   Lucent Has Properly Pled A Breach Of Contract Claim Against The Preferred Entities ..................................... 10

            1.   Preferred Unlimited, Inc. Directly Contracted With Lucent To Pay $200,000 In Exchange For An Extension Of The Closing Date ........................... 11

            2.   As An Assignee, Preferred Unlimited Of Holmdel, LP Is Bound By All Of Purchaser's Obligations In The Purchase Agreement ........................... 12

        B.   Lucent Has Plead Sufficient Allegations To Sustain Its Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim ......... 13

POINT II .................................................... 17

    LUCENT HAS PLED SUFFICIENT FACTS TO PIERCE THE CORPORATE VEIL ............................................ 17

        A.   Preferred Real Estate Investment, LLC's Status As A Limited Liability Company Is Irrelevant To The Piercing The Corporate Veil Analysis ................................ 18

-i-

**TABLE OF CONTENTS**
(continued)

**Page**

B.   Lucent's Factual Allegations Sufficiently
Set Forth A Claim For Piercing The Corporate
Veil ........................................20

C.   Preferred's Motion To Dismiss Is Premature
And Lucent Should Be Permitted to Conduct
Discovery On The Issues Relating To Its Veil
Piercing/Alter Ego Claims ....................25

CONCLUSION..............................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Atlantic City Racing Ass'n v. Sonic Financial Corp.</u>,
  90 F.Supp.2d 497 (D.N.J.)................................. 14

<u>Bell Atl. Corp. v. Twombly</u>,
  127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................. 9

<u>Beuff Enters. Fla., Inc. v. Lisbert</u>,
  2008 U.S. Dist. LEXIS 50591 (D.N.J. 2008) (No. 07-2159)..... 18

<u>CGB Occupational Therapy, Inc.</u>
  <u>v. RHA/Pennslyvania Nursing Homes, Inc.</u>,
  2002 U.S. Dist. LEXIS 3359
  (E.D. Pa. Feb. 26, 2002) (No. 00-4918) .................... 26

<u>Cottrell v. Wheels</u>,
  2008 U.S. Dist. LEXIS 88505 (D.N.J. Oct. 31, 2008).......... 9

<u>D.R. Horton, Inc. v. Dynastar Development, L.L.C.</u>,
  No. 1808-00, 2005 WL 1939778
  (Law Div. Aug. 10, 2005)(MER-L-1808-00) ................ 19, 21

<u>Ford Motor Co. v. Edgewood Props., Inc.</u>,
  2008 U.S. Dist. LEXIS 84776 (D.N.J. 2008) ................. 18

<u>Ginley v. E.B. Mahoney Builders, Inc.</u>,
  2004 U.S. Dist. LEXIS 19336
  (E.D. Pa. Sept. 23, 2004) (No. 04-1986) ................... 26

<u>Government of Virgin Islands,</u>
  <u>Bureau of Internal Revenue v. Lansdale</u>,
  172 F.Supp.2d 636 (D.V.I. 2001)........................... 21

<u>In re Cendant Corp. Sec. Litig.</u>,
  139 F. Supp.2d 585 (D.N.J. 2001) ......................... 10

<u>In re Mass</u>,
  178 B.R. 626 (M.D.Pa. 1995).............................. 21

<u>Kost v. Kozakiewicz</u>,
  1 F.3d 176 (3d Cir. 1993)................................. 9

<u>Lankford v. Irby</u>,
  2006 U.S. Dist. LEXIS 70830 (D.N.J. 2006) (No. 04-2636)..... 18

<u>Mall at IV Group Props., LLC v. Roberts</u>,
  2005 U.S. Dist LEXIS 31860 (D.N.J. 2005) (No. 02-4692)...... 18

<u>McGovern v. Jack D's, Inc.</u>,
  2004 U.S. Dist. LEXIS 1985, (E.D.Pa. Feb. 3, 2004)
  (No. 03-5547), <u>modified on other grounds</u>,
  2004 U.S. Dist. LEXIS 4326 (E.D. Pa. Feb. 25, 2004...... 21, 25

McGrath v. Poppleton,
  550 F. Supp.2d 564 (D.N.J. 2008) ........................... 14

Melikian v. Corradetti,
  791 F.2d 274, 281-83 (3d Cir. 1986) ....................... 20

Motorola, Inc. v. Airdesk, Inc.,
  2005 U.S. Dist. LEXIS 6601,
  (E.D. Pa. Apr. 15, 2005) (No. 04-4940) .................... 23

Nassau Construction Co. Inc. v. Pulte Homes, Inc.,
  2008 U.S. Dist. LEXIS 41631
  (D.N.J. May 29, 2008)(No. 07-5536)..................... 24, 27

Orion Power Midwest, L.P. v. Am. Coal Sales Co.,
  2007 U.S. Dist. LEXIS 86106
  (W.D. Pa. Nov. 21, 2007) (No. 2:05-555). .................. 27

OTR Associates v. IBC Services,
  353 N.J. Super. 48 (App. Div. 2002) ....................... 23

Platinum Links Entm't v. Atlantic City Surf Prof'l Baseball
  Club, Inc.,
  2006 U.S. Dist. LEXIS 36652 (D.N.J. 2006) (No. 02-4106)..... 18

Prime Capital Group, Inc. v. Klein,
  2008 U.S. Dist. LEXIS 58771 (D.N.J. July 28, 2008)......... 20

Seidenberg v. Summit Bank,
  348 N.J. Super. 243 (App. Div. 2002) ...................... 15

Shenango Inc. v. Am. Coal Sales Co.,
  2007 U.S. Dist. LEXIS 58110
  (W.D. Pa. Aug. 9, 2007) (No. 2:06-149) .................... 27

Shotmeyer v. N.J. Realty Title Ins. Co.,
  195 N.J. 72 (2008) ........................................ 19

Sons of Thunder, Inc. v. Borden, Inc.,
  148 N.J. 396 (1997) ....................................... 15

Telmark Packaging Corp., Inc. v. Nutro Laboratories and Nature's
  Bounty,
  2008 U.S. Dist. LEXIS 45
  (D.N.J. Jan. 2, 2008) (No. 05-3049) ....................... 17

Verni ex rel. Bernstein v. Harry M. Stevens, Inc.,
  387 N.J. Super. 160 (App.Div. 2006) ....................... 24

Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,
  210 F. Supp.2d 552 (D.N.J. 2002) .......................... 10

Village at Camelback Property Owners Assn. Inc. v. Carr,
  371 Pa.Super. 452 (Pa. Super. Ct. 1988), aff'd, 524 Pa. 330
  (1990)..................................................... 22

<u>Wilson v. Rackmill</u>,
  878 F.2d 772 (3d Cir. 1989) .................................. 9

**Statutes**

15 Pa.C.S.A. § 8904 ......................................... 19

**Other Authorities**

5 Wright & Miller, <u>Federal Practice and Procedure</u>,
  §1235 ..................................................... 10

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................. 9, 27

Defendants LTI Technologies, Inc. and LT NJ Finance LLC, ("Lucent") submit this Memorandum of Law in opposition to the motion of Defendants Preferred Real Estate Investments, LLC, Preferred Unlimited, Inc. Preferred Unlimited of Holmdel and Preferred Unlimited of Crawfords Corner Road, LLP. (collectively, "Preferred")[1] to dismiss Lucent's Third Party Complaint.

## PRELIMINARY STATEMENT

Preferred's motion to dismiss suggests that Preferred wants to play the well-known shell game.  Despite the fact that the Preferred entities were created and named for the property at issue in this litigation, located 101 Crawfords Corner Road in Holmdel, New Jersey (the "Property"), utilize the same address and office space, have common officers, and were interchangeably involved in its proposed sale of the property, Preferred asserts that Lucent is not entitled to assert direct claims against these entities.  Preferred's argument is wholly without merit and must be rejected.

As an initial matter, Lucent has satisfied its notice pleading obligations and provided the Preferred entities with a plain statement of the claims against them.  While Preferred contends that Lucent has insufficiently pled such claims, it

---

[1]   Because the roles of the Preferred entities are interchangeable, Lucent is compelled to refer to them collectively as "Preferred" or the "Preferred entities" herein.

relies on authorities addressing summary judgment or post-trial
motions analyzing the sufficiency of facts and evidence rather
than the sufficiency of the allegations.  Clearly, at this stage
of the proceedings, where there has been no discovery and no
opportunity to further elaborate on the nature and relationship
of these Preferred entities, Lucent's specific factual
allegations have sufficiently alleged a cognizable claim --
whether for breach of contract, breach of the implied covenant
of good faith and fair dealing, or to pierce the Preferred
corporate veil.

Preferred's position, premised upon a revisionist history
of the parties' relationship, is belied by the parties'
agreement, by the parties' course of dealing, and by the
documents relating to the subject transaction.  Indeed, as the
documents relating to the purchase and sale of the Property
plainly demonstrate, the Preferred entities were all intimately
involved and part of the contractual relationship at issue in
this litigation.  Thus, critically, these Preferred entities are
directly obligated to Lucent for the contractual obligations
Lucent seeks to enforce in its counterclaims -- regardless of
whether Lucent's piercing the corporate veil/alter ego theory is
ultimately sustained.

Moreover, at all relevant times, Lucent was dealing with
"Preferred" -- whether operating under the name Preferred Real

Estate Investments, LLC, Preferred Unlimited, Inc.[2], Preferred Unlimited of Holmdel LP, or Preferred Unlimited of Crawfords Corner Road, LP.  Under such circumstances, Lucent has cognizable claims against all of these Preferred entities and Preferred's motion to dismiss must, accordingly, be denied.

**STATEMENT OF RELEVANT FACTS**

Lucent owns the Property, located at 101 Crawfords Corner Road in Holmdel, New Jersey, that is the subject of the current dispute between the parties.  On March 22, 2006, after a brief period of negotiations, Lucent executed a Purchase and Sale Agreement (as at any time amended, the "Purchase Agreement") with Preferred for the sale and purchase of the Property for the sum of $72,000,000.  See Declaration of Patrick Morrison, previously filed with the Court on March 3, 2008, ("Morrison Decl.") at ¶ 6; at Ex. A.  Thereafter, the purchase price of the property and the closing date for Preferred's purchase were changed as a result of amendments to the Purchase Agreement.

**A.    The Preferred Entities Were Intimately Involved In The Sale And Purchase Of The Property**

Although the Purchase Agreement initially identified Preferred Real Estate Investments LLC as the seller, at all relevant times the other Preferred entities were involved in the

---

[2]     Preferred Unlimited, Inc. was formerly known as Preferred Real Estate Investments, Inc.  On or about August 8, 2007, Preferred Real Estate Investments, Inc. changed its name to Preferred Unlimited, Inc.  Third-Party Complaint, at ¶ 7.

purchase of the Property and a part of the contractual relationship created by the Purchase Agreement as amended. Indeed, the following documents demonstrate the involvement of the Preferred entities:

- Preferred Unlimited, Inc.'s agreement to pay $200,000 a month to extend the closing date on its purchase of the Property; Declaration of Patrick Morrison, filed herewith ("Morrison Decl. II"), at Ex. A.

- a letter from Jennifer E. Matthews, Esquire, General Counsel for Preferred Real Estate Investments, Inc. (now known as Preferred Unlimited, Inc.) as agent for Preferred Real Estate Investments, LLC; Id. at Ex. B.

- the Property's Closing Financial Statement identifying Preferred Unlimited of Holmdel, L.P. as the Buyer by assignment from Preferred Real Estate Investments, LLC; Id. at Ex. C.

- the draft deed to the Property listing LTI NJ Finance LLC as the Grantor and Preferred Unlimited of Holmdel, L.P. as the Grantee; Id. at Ex. D.

- a letter from Lewis Lefkowitz, Esq., counsel for LTI, to the law firm of Cozen O'Connor ("Cozen") addressing Cozen's request for a conflict waiver so that Cozen can represent PREI

"and its affiliates[3]" in environmental concerns related to the acquisition of the Property; Id. at Ex. E.

• a letter from Preferred's attorney requesting "Seller's approval to the assignment of Purchaser's rights under the Agreement to Preferred Unlimited of Holmdel ("Assignee") and explaining that "Assignee's sole general partner is Preferred Unlimited of Holmdel, Inc. ("General Partner") and that "Assignee and General Partner are affiliates of and controlled by Purchaser [Preferred Real Estate Investments, LLC] and Principals;" Id. at Ex. F. and

• the Preferred Unlimited, Inc. website that currently identifies the Property as a "milestone" project despite Preferred's claim that Preferred Unlimited, Inc. is not affiliated with the Property. Declaration of Frederick Alworth, previously filed with the Court on March 3, 2008, at Ex. C.

Preferred's attempt to limit the scope of the relationship between the parties to include only Preferred Real Estate Investments, LLC is simply contrary to these documents. Moreover, as alleged in Lucent's Third-Party Complaint, these Preferred entities are all interrelated such that Lucent was, in essence, dealing with a single Preferred entity. Indeed, Preferred Real Estate Investments, LLC, Preferred Unlimited

---

[3] Lucent submits that these "affiliates" are the Preferred entities sued herein.

Crawfords Corner Road, LLC, Preferred Unlimited of Holmdel LP, and Preferred Unlimited, Inc. have common ownership between and among each other, a common principal place of business, and use common e-mail addresses, e-mail signatures, and corporate letterhead. Third-Party Complaint, at ¶ 19. In addition, Preferred utilized the funds of principals of the Preferred entities to make payments to Lucent required under the terms of the Purchase Agreement. Id. at ¶ 20.

**B. Preferred Breached The Purchase Agreement By Failing To Close On The Purchase Of The Property Due To Its Inability To Obtain Satisfactory Financing**

Preferred was originally set to close on the Property on August 31, 2007, but the closing date was extended at Preferred's request to September 14, 2007, and again to September 26, 2007. Morrison Decl. at ¶ 15; at Ex. C. Defendants were ready, willing, and able to close on September 26, 2007. See id. at ¶ 17. However, Preferred was unable to close on that date. Preferred's last-minute cancellation of and failure to attend the scheduled September 26, 2007 closing was a breach of its obligations under the Purchase Agreement.

Defendants, however agreed to Preferred's request to extend the closing date until October 26, 2007. Significantly, this agreement was between Lucent and Preferred Unlimited, Inc. Indeed, Lucent sent an e-mail to Mike O'Neill and D. Charles Houder of Preferred Unlimited, Inc., stating in relevant part:

This will confirm our conversation Monday
concerning _your_ inability to obtain adequate
financing for the purchase of Lucent's
Holmdel, NJ property and _your_ request for a
short-term extension of the closing date.
In consideration of Lucent Technologies
extending the closing for up to three weeks,
you agreed that _you_ will pay $200,000 per
month ($6,667 per day)  to Lucent to defray
its carrying costs, which will he prorated
on a  daily basis starting September 27,
2007.  It is our expectation that  this
financing dilemma will be resolved in the
next few weeks and that both parties will be
ready to close immediately following
resolution.  This is not an open-ended
extension, and the closing must occur no
latter [sic] than October 26, 2007, time
being of the essence.  Whether or not a
closing does occur, the $200,000 per month
carrying cost will still be due and payable
to Lucent through October 26, 2007.

Morrison Decl. II, at Ex. A (emphasis added).  In response,

Preferred Unlimited Inc. (through its representative D. Charles

Houder), responded "Agreed."  Id.  Preferred did not close on

October 26, 2007, nor did it provide the payment in an amount

not less than $200,000.  Morrison Decl., at ¶¶ 22, 27.

On November 6, 2007 Lucent confirmed with Preferred that

Preferred was in default of its obligations under the parties'

agreement because it had failed to close on the purchase of the

Property and failed to make payment to Defendants in an amount

not less than $200,000 as agreed to on October 3, 2007.

Preferred never cured this default.  See id. at ¶¶ 26-27, at Ex.

H.

On November 5, 2007 -- after being advised that Defendants would not agree to any further reductions in the purchase price -- Preferred purported to terminate the Purchase Agreement, by way of letter to Lucent's in-house counsel, on account of Defendants alleged failure to provide Preferred with an estoppel certificate from Tyco.  See id. at ¶ 48, at Ex. K. Nevertheless, Defendants went ahead, obtained a signed estoppel certification from Tyco, and provided all necessary documentation to Preferred on November 8, 2007 -- well within the cure period provided for in the Purchase Agreement.  See id. at ¶ 51, at Ex. M and Ex. N.

**C.   Preferred  Filed A Complaint To Obscure Its Own Breach Of The Purchase Agreement**

As noted above, as a result of Preferred's failure to close and make the agreed-upon payment for extending the closing date to October 3, 2007, Lucent formally notified Preferred on November 6, 2007 that it was in default of its obligation under the terms of the Purchase Agreement.  As set forth in the parties' agreement, Lucent provided Preferred five (5) days to cure these defaults.  See Morrison Decl., at ¶ 26, at Ex. H. Preferred, however, took no action and remains in breach of its contractual obligations to Lucent.  See id. at ¶ 27.  On November 8, 2007, Preferred filed its Complaint.

Preferred breached its agreement with Lucent by failing to abide by its obligations to close on September 26, 2007, to close by October 26, 2007, and to make a payment to Defendants in an amount not less than $200,000. Accordingly, on February 28, 2008 Lucent asserted a counterclaim to enforce its rights under the Purchase Agreement. Thereafter, on October 14, 2008, Lucent filed an Amended Answer, Counterclaims and Third-Party Complaint against the Preferred entities.

On October 24, 2008, Preferred filed a motion to dismiss the Third-Party Complaint. The parties have exchanged and responded to interrogatories and requests for admissions. Document requests have also been exchanged but no documents have been produced by any party because the parties have been unable to come to terms with certain provisions of a protective order.

## LEGAL ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted. Cottrell v. Wheels, 2008 U.S. Dist. LEXIS 88505, *4 (D.N.J. Oct. 31, 2008) (No. 08-1738); Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint. Kost v.

Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill,
878 F.2d 772, 775 (3d Cir. 1989). All that is required to defeat
a motion is that the factual allegations in the complaint "raise
a right to relief above the speculative level." Bell Atl. Corp.
v. Twombly, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)
(citation omitted).

**POINT I**

**LUCENT HAS ASSERTED DIRECT CLAIMS AGAINST THE
PREFERRED ENTITIES ARISING OUT OF THEIR
CONTRACTUAL OBLIGATIONS TO LUCENT**

**A.   Lucent Has Properly Pled A Breach Of Contract Claim
Against The Preferred Entities**

It is well settled under New Jersey law that a party
alleging a breach of contract satisfies its pleading requirement
if it alleges (1) a contract; (2) a breach of that contract; (3)
damages flowing therefrom; and (4) the party performed its own
contractual duties.  See Video Pipeline, Inc. v. Buena Vista
Home Entm't, Inc., 210 F. Supp.2d 552, 561 (D.N.J. 2002); see
also 5 Wright & Miller, Federal Practice and Procedure, § 1235
at 189-90; In re Cendant Corp. Sec. Litig., 139 F. Supp.2d 585.
604 n.10 (D.N.J. 2001) (indicating that New Jersey law requires
pleading of performance of movant's own contractual duties).

Lucent has adequately plead these elements in its Third-
Party Complaint, alleging:

(1) Counterclaimants/Third-Party Plaintiffs executed the Purchase and Sale Agreement, dated March 22, 2006, with Preferred.  <u>Third-Party Complaint</u>, at ¶ 23;

(2) Counterclaimants/Third-Party Plaintiffs and Preferred executed a number of written amendments to the Purchase and Sale Agreement… <u>Id.</u> at ¶ 24;

(3) Pursuant to the terms of the contract as amended, Preferred was obligated to close on the purchase of the Property on or before the closing date.  Counterclaimants/Third-Party Plaintiffs entered into an agreement to extend the closing date to October 26, 2007 in exchange for Preferred promising to pay Counterclaimants/Third-Party Plaintiffs $200,000 on or before October 26, 2007 regardless of whether the closing occurred (with a $6,667 per diem.)  <u>Id.</u> at ¶ 48;

(4)  Preferred breached its contract as amended with Counterclaimants/Third-Party Plaintiffs by failing to close on the purchase of the Property on or before October 26, 2007 and by failing to pay Counterclaimants/Third-Party Plaintiffs an amount not less than $200,000 by October 26, 2007.  <u>Id.</u> at ¶ 50;

(5)  Counterclaimants/Third-Party Plaintiffs have been damaged by Preferred's breach of the contract as amended.  <u>Id.</u> at ¶ 51.

Moreover, as set forth in further detail below and contrary to the arguments advanced by Preferred, the Preferred entities

- 11 -

are clearly and directly implicated in the contractual
relationship that is the subject of the dispute.

1.  **Preferred Unlimited, Inc. Directly Contracted
With Lucent To Pay $200,000 In Exchange For An
Extension Of The Closing Date**

While Preferred contends that Preferred Real Estate
Investments, LLC and Lucent are "the only parties to the
contract upon which this action is based," that is simply not
true.  Preferred Brief, at p. 1.  Indeed, Preferred Unlimited,
Inc. directly contracted with Lucent to pay $200,000 a month to
extend the closing date on its purchase of the Property.
Morrison Decl. II, at Ex. A.  Significantly, Lucent seeks
recovery of this money as part of its counterclaim against
Preferred.  See Third-Party Complaint, at ¶ 50, Wherefore
Clauses of Counts I, II, and III.  This alone is sufficient to
warrant Preferred Unlimited, Inc.'s continued involvement in the
case.

2.  **As An Assignee, Preferred Unlimited Of Holmdel,
LP Is Bound By All Of Purchaser's Obligations In
The Purchase Agreement**

Moreover, the plain language of the Purchase Agreement
obligates Preferred Unlimited of Holmdel, LP to all contractual
obligations set forth therein.  Indeed, Article 10.3 of the
Purchase Agreement, entitled "Assignment," provides in relevant
part that:

> [T]he <u>terms and provisions of this Agreement</u>
> <u>are to apply to and bind the permitted</u>
> <u>successors and assigns of the parties</u>
> <u>hereto.</u>  <u>Any assignee must assume all the</u>
> <u>obligations of Purchaser under this</u>
> <u>Agreement</u> and specifically agree to purchase
> the Property, pay the Progress Payments and
> Purchase Price as and when due, and execute
> all documents and perform all obligations of
> Purchaser under this Agreement as if said
> assignee were the originally named Purchaser
> hereunder.  <u>The provisions of this Section</u>
> <u>10.3 shall survive the Closing or any</u>
> <u>termination of this Agreement.</u>

<u>Morrison Decl.</u> at Ex. A (emphasis added).  On or about September 20, 2008, Preferred's attorney wrote Lucent, requesting "Seller's approval to the assignment of Purchaser's rights under the Agreement to Preferred Unlimited of Holmdel ("Assignee") pursuant to Section 10.3 of the Agreement." <u>Morrison Decl. II</u>, at Ex. F.  This request was granted and Preferred Unlimited of Holmdel was assigned Preferred Real Estate Investments, LLC's rights and obligations under the Purchase Agreement.  <u>See</u> <u>id.</u> Further, the contractual obligations assumed by Preferred Unlimited of Holmdel survive Preferred's termination of the Purchase Agreement.  <u>See</u> <u>id.</u> at Ex. A.

As the foregoing makes clear, by virtue of the assignment, Preferred Unlimited of Holmdel is essentially a <u>de</u> <u>facto</u> party to the Purchase Agreement, subject all of the obligations imposed on the Purchaser therein.  Accordingly, Lucent has

asserted a cognizable claim for breach of contract against this entity.

**B.    Lucent Has Plead Sufficient Allegations To Sustain Its Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim**

Because the Preferred entities are parties to contractual obligations, whether as a party directly named in the Purchase Agreement, a party directly contracting with Lucent, or as an assignee, Lucent has properly asserted claims of breach of the covenant of good faith and fair dealing against these entities. See McGrath v. Poppleton, 550 F. Supp.2d 564, 575-76 (D.N.J. 2008) (covenant of good faith and fair dealing is implicit in every contract in New Jersey).

Preferred argues that even assuming a valid contract, "[Preferred Real Estate Investments, LLC] terminated its agreement with Lucent pursuant to the contract's straightforward termination clause" and cannot be held liable for breach of the covenant of good faith and fair dealing. Preferred Br., at pp. 18-19. In support of this proposition, Preferred relies upon the decision of the District Court in Atlantic City Racing Ass'n v. Sonic Financial Corp., 90 F.Supp.2d 497 (D.N.J.). In that case, however, the purchaser had the right to terminate the proposed transaction "in its sole discretion" during the inspection period. Id. at 500. Prior to the expiration of this

- 14 -

inspection period, the purchaser terminated.  <u>Id.</u> at 501.  The
Court determined that the seller could not sustain a breach of
implied covenant of good faith and fair dealing claim because to
do so would override the express termination provision that
provided the purchaser with unilateral discretion to terminate
during the inspection period.  <u>Id.</u> at 511-12.

        Here, however, the termination provision set forth in
section 4.7 of the Purchase Agreement only provided Preferred
with the opportunity to terminate upon the failure of certain
conditions precedent specifically identified in section 4.6.
<u>Morrison Decl.</u>, at Ex. A.  Thus, Preferred did not have
unilateral discretion to terminate the Purchase Agreement prior
to the closing date and its purported effort to do so is subject
to the obligations imposed by the implied covenant of good faith
and fair dealing.[4]  <u>See</u> <u>Seidenberg v. Summit Bank</u>, 348 N.J.
Super. 243, 258 (App. Div. 2002) ("instead of altering or
overriding an express term, <u>the implied covenant requires that a</u>
<u>contracting party act in good faith when exercising</u> either

---

[4]     Further, Lucent expressly contests that there was a failure
of the purported condition precedent relied upon by Preferred -
the failure to procure the Tyco Estoppel Certificate.  Indeed,
Preferred was responsible for obtaining the subject Tyco
Estoppel Certificate and, as such, Preferred had no right -- in
its discretion or otherwise -- to terminate the Purchase
Agreement pursuant to section 4.7.  In addition, even if
Preferred could terminate the Purchase Agreement because of the
Tyco Estoppel Certificate, Lucent properly cured this alleged
defect within the time set forth in the Purchase Agreement.  <u>See</u>
<u>Third-Party Complaint</u>, at ¶¶ 38-40.

discretion in performing its contractual obligations, or <u>its right to terminate</u>")(emphasis added).

Moreover, the basis for Lucent's implied covenant and good faith and fair dealing claim in this case is not that Preferred breached the termination provision set forth in article 4.7, but that its conduct up to and including its purported termination was not in good faith.  <u>See</u> <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 398-399 (1997)("For Borden and the majority of the Appellate Division, however, the sole issue was whether the implied covenant of good faith and fair dealing can override an express and unambiguous termination clause in a contract.  <u>That position focuses only on whether Borden breached the express terms of the termination provision and ignores the fact that a party's performance may breach the implied covenant of good faith and fair dealing even when termination of the contract itself does not violate the termination provision</u>.") (emphasis added).

As set forth in the Third-Party Complaint, Preferred induced Lucent to extend the closing date, by agreeing to pay $200,000 per month, to allow Preferred to obtain sufficient financing to purchase the Property.  <u>See</u> <u>Third-Party Complaint</u>, at ¶¶ 34-35.  Preferred, however, did not follow through on its obligations.  Instead, when Lucent declined further extensions of the closing date and Preferred's request to lower the

purchase price, Preferred suddenly purported to terminate the
Purchase Agreement on the basis that Lucent had not provided
Preferred with the Tyco Estoppel Certificate -- even though
Preferred had previously agreed to procure the Tyco Estoppel
Certificate and had not indicated that it was an impediment to
closing.  See Morrison Decl., at ¶¶ 24-25, 41-44; Third-Party
Complaint, at ¶¶ 49, 41-42.  The allegations set forth in the
Third-Party Complaint regarding Preferred's misfeasance are
plainly sufficient at this stage of the litigation to sustain
Lucent's claims that Preferred breached the implied covenant of
good faith and fair dealing.  As such, Preferred's motion should
be denied.  See Telmark Packaging Corp., Inc. v. Nutro
Laboratories and Nature's Bounty, 2008 U.S. Dist. LEXIS 45, *9-
10 (D.N.J. Jan. 2, 2008) (No. 05-3049) (noting that even where
party had a right to terminate its contract, judgment as a
matter of law is inappropriate where there are disputed issues
of fact regarding whether the party breached the implied
covenant of good faith and fair dealing while the contact was in
effect).

### POINT II

### LUCENT HAS PLED SUFFICIENT FACTS TO PIERCE THE CORPORATE VEIL

Unable to refute that Lucent has met the basic pleading
requirements for its breach of contract and breach of the

implied covenant of good faith and fair dealing claims,
Preferred attempts to obfuscate Lucent's Third-Party Complaint
by challenging whether Lucent has sufficiently pled allegations
to support a piercing the corporate veil theory of liability.
As an initial matter, and as noted above, the Preferred
entities' liability is premised on their contractual obligations
to Lucent by virtue of their direct contractual relationship
with Lucent and/or their role as assignees to such contractual
obligations.  These breach of contract claims are properly pled
and are <u>not</u> dependent upon the sufficiency of any piercing the
corporate veil allegations.  In addition, however, Preferred's
argument fails because Lucent has pled sufficient facts to
support a veil piercing/alter ego theory of liability against
the Preferred entities.

**A.  Preferred Real Estate Investment, LLC's Status As A
     Limited Liability Company Is Irrelevant To The
     Piercing The Corporate Veil Analysis**

Preferred initially claims that Lucent cannot pierce the
veil because Preferred Real Estate Investments, LLC is a limited
liability company.  This argument is without merit and contrary
to this Court's established precedent.

Significantly, this Court routinely does not distinguish
between a corporation and a limited liability company when
applying the "veil piercing" doctrine.  <u>See, e.g.</u>, <u>Ford Motor</u>

Co. v. Edgewood Props., Inc., 2008 U.S. Dist. LEXIS 84776, *42-
44 (D.N.J. 2008); Beuff Enters. Fla., Inc. v. Lisbert, 2008 U.S.
Dist. LEXIS 50591, *37-42 (D.N.J. 2008) (No. 07-2159); Lankford
v. Irby, 2006 U.S. Dist. LEXIS 70830, *10-12 (D.N.J. 2006) (No.
04-2636);; Platinum Links Entm't v. Atlantic City Surf Prof'l
Baseball Club, Inc., 2006 U.S. Dist. LEXIS 36652, *59-62 (D.N.J.
2006) (NO. 02-4106); Mall at IV Group Props., LLC v. Roberts,
2005 U.S. Dist LEXIS 31860, *17-21 (D.N.J. 2005) (No. 02-4692).
Further, with the exception of D.R. Horton, Inc. v. Dynastar
Development, L.L.C., No. 1808-00, 2005 WL 1939778 (Law Div. Aug.
10, 2005)(MER-L-1808-00) -- the unpublished trial court decision
relied upon by Preferred -- New Jersey state courts do not
distinguish between corporations and limited liability companies
for purposes of piercing the corporate veil. Cf. Shotmeyer v.
N.J. Realty Title Ins. Co., 195 N.J. 72, 86-87 (2008) (failing
to distinguish between corporation and other business structures
in refusing to "pierce the corporate veil" of limited and
general partnerships).

Moreover, the D.R. Horton, Inc. decision relied upon by
Preferred involved a New Jersey limited liability company
subject to New Jersey's Limited Liability Company Act.  2005 WL
1939778 at *3.  As the Court there stated: "New Jersey's limited
liability statute does not apply corporate veil-piercing
doctrine to limited liability companies.  Rather it appears to

- 19 -

endorse the evolution of court-made rules." <u>Id.</u> at *31.  Here,
however, Preferred Real Estate Investments, LLC is a
<u>Pennsylvania</u> limited liability company.  <u>Third-Party Complaint</u>,
at ¶ 3.  Unlike New Jersey's Limited Liability Act,
Pennsylvania's Limited Liability Company Law of 1994 explicitly
contemplates the piercing of limited liability companies.
Specifically, the comment to 15 Pa.C.S.A. § 8904 provides that:
"It is expected, for example, that <u>in the appropriate case the
doctrine of piercing the corporate veil will be applied to a
limited liability company</u>."  <u>Id.</u> (emphasis added).  Thus,
Preferred's argument that its status as a limited liability
company exempts it from Lucent's claims must be rejected.

**B.  Lucent's Factual Allegations Sufficiently Set Forth A
     Claim For Piercing The Corporate Veil**

     Notwithstanding this extraneous issue created by Preferred
to distract the Court from Lucent's straightforward breach of
contract claims, Lucent has provided sufficient allegations in
its Third-Party Complaint, in accordance with the clear
standards in the Federal Rules of Civil Procedure, to sustain a
veil piercing claim.  <u>See</u>, <u>e.g.</u>, <u>Melikian v. Corradetti</u>, 791
F.2d 274, 277, 281-83 (3d Cir. 1986) (noting that allegations in
complaint must be accepted as true and viewed in light most
favorable to plaintiff in finding that veil piercing claim
survived motion to dismiss); <u>Prime Capital Group, Inc. v. Klein</u>,

- 20 -

2008 U.S. Dist. LEXIS 58771, *29-30 n.14 (D.N.J. July 28, 2008) (No. 07-414) (noting that requirements to survive motion to dismiss are less stringent than those for surviving motion for summary judgment).

Initially, Preferred's reliance on New Jersey law to determine the sufficiency of Lucent's piercing the corporate veil allegations is improper because the Preferred entities were incorporated and/or created under the laws of Pennsylvania.  See Third-Party Complaint, at ¶¶ 3, 6, 9, and 11.  Indeed, courts will apply the law of the state of incorporation to determine issues relating to piercing a company's veil.[5]  See, e.g., Government of Virgin Islands, Bureau of Internal Revenue v. Lansdale, 172 F.Supp.2d 636, 645, n. 8 (D.V.I. 2001) (stating that "[t]he Court applies the law of the state of incorporation to make this determination" and citing to the Restatement (Second) of Conflicts § 307 for the proposition that: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation ... and to its creditors for corporate debts.").

As the Court stated in McGovern v. Jack D's, Inc.:

---

[5]     Notably, the D.R. Horton case relied upon by Preferred is in accord with this proposition.  Indeed, the court there noted that  "[t]he apparent weight of authority agrees that veil-piercing analysis is governed by the law of the state of formation."  2005 WL 1939778 at *20.

> Under Pennsylvania law, there is no
> specific test for determining whether the
> corporate veil may be pierced.  Rather, the
> courts employ a totality of the
> circumstances test.  Using this test,
> Pennsylvania courts have generally been
> willing to pierce the corporate veil
> whenever necessary to prevent injustice.
> Such a broad standard has invited the
> consideration of a variety of factors and
> theories when determining whether to pierce
> the corporate veil.

2004 U.S. Dist. LEXIS 1985, *3-4 (E.D.Pa. Feb. 3, 2004) (No. 03-

5547) (internal quotation marks and citations omitted), modified

on other grounds, 2004 U.S. Dist. LEXIS 4326 (E.D. Pa. Feb. 25,

2004).  In re Mass, 178 B.R. 626, 630 (M.D.Pa. 1995) (internal

citations and quotation marks omitted) ("Pennsylvania courts

have recognized that piercing the corporate veil is not limited

to situations were such is necessary to prevent a fraud.

Instead, the corporate entity will be disregarded whenever

justice or public policy require and where rights of innocent

parties are not prejudiced.")  As such, in considering a claim

for alleging veil piercing/alter ego:

> [Pennsylvania] courts are basically
> concerned with determining if equity
> requires that the shareholders' traditional
> insulation from personal liability be
> disregarded and with ascertaining if the
> corporate form is a sham, constituting a
> facade for the operations of the dominant
> shareholder.  Thus, we inquire, whether
> corporate formalities have been observed and
> corporate records kept, whether officers and
> directors other than the dominant
> shareholder himself actually function, and

> whether the dominant shareholder has used
> the assets of the corporation as if they
> were his own.

Village at Camelback Property Owners Assn. Inc. v. Carr, 371 Pa.Super. 452, 461 (Pa. Super. Ct. 1988) (internal citations omitted), aff'd, 524 Pa. 330 (1990).

Here, Lucent has alleged significant and specific facts to sustain its burden of pleading piercing the corporate veil under a totality of the circumstances test. By way of example, Lucent has alleged that Preferred Real Estate Investments, LLC, Preferred Unlimited Crawfords Corner Road, LLC, Preferred Unlimited of Holmdel LP, and Preferred Unlimited, Inc. have common ownership between and among each other, a common principal place of business, and use common e-mail addresses, e-mail signatures, and corporate letterhead. Third-Party Complaint, at ¶ 19. In addition, Preferred utilized the funds of principals of the Preferred entities to make payments to Lucent required under the terms of the Purchase Agreement. Id. at ¶ 20. These allegations are sufficient to sustain Lucent's claim at this juncture of the proceedings. See, e.g., Motorola, Inc. v. Airdesk, Inc., 2005 U.S. Dist. LEXIS 6601, *5 (E.D. Pa. Apr. 15, 2005) (No. 04-4940) (denying motion to dismiss and stating that "averments contained in the Complaint alleging intermingling of corporate and personal funds and the use of

Airdesk funds for personal purposes are sufficient to allow a claim for piercing the corporate veil to proceed").

Moreover, Lucent's allegations are sufficient even if the Court were to apply New Jersey law.  To pierce the corporate veil, the parent must so dominate the subsidiary that the subsidiary had no separate existence, but was merely a conduit for the parent.  OTR Associates v. IBC Services, 353 N.J. Super. 48, 52 (App. Div. 2002).  Beyond dominance, to pierce the corporate veil, a court must also find that the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise circumvent the law.  See id.  As noted above, Preferred's Third-Party Complaint includes such allegations.

Preferred's citation to Nassau Construction Co. Inc. v. Pulte Homes, Inc., 2008 U.S. Dist. LEXIS 41631 (D.N.J. May 29, 2008)(No. 07-5536) is readily distinguishable because Lucent had provided the Court with supporting details related to Preferred's interchangeable role in the purchase of the Property.  Judge Irenas dismissed plaintiff's veil piercing claim there because its allegations "lacked factual detail and constitute[d] nothing more than an intangible suspicion that, by itself, cannot survive a motion to dismiss."  Id. at *5.  In contrast, Lucent provides the Court with tangible facts and documentation supporting its veil piercing claims.

Lucent cites facts in its Third-Party Complaint and documents in this brief that provide a sufficient basis to pierce the corporate veil and are in accord with the test in <u>Verni ex rel. Bernstein v. Harry M. Stevens, Inc.</u>, 387 N.J. Super. 160, 199-200 (App. Div. 2006).  At this stage of the litigation, without any exchange of documents by the parties, the allegations in the Third-Party Complaint, coupled with the facts and documents[6] cited in this brief, provide sufficient support to sustain Lucent's claims against the Preferred entities under the doctrine of piercing the corporate veil.  Accordingly, Preferred's motion on this basis must also be denied.

**C.     Preferred's Motion To Dismiss Is Premature And Lucent Should Be Permitted to Conduct Discovery On The Issues Relating To Its Veil Piercing/Alter Ego Claims**

Even if this Court were to determine that Lucent's allegations regarding its veil piercing/alter ego claims could be stronger, Lucent has pled sufficient facts for this Court to deny Preferred's motion and allow full exploration of the relationship between Preferred Real Estate Investments, LLC,

---

[6]     By way of example, in its September 20, 2007 letter requesting that Lucent agree to the assignment of the rights and obligations in the Purchase Agreement from Preferred Real Estate Investments, LLC to Preferred Unlimited Holmdel, LP, Preferred's counsel advised: "<u>Assignee</u> and General Partner are affiliates of and <u>controlled by Purchaser [Preferred] and Principals</u>." <u>Morrison Decl. II</u>, at Ex. F (emphasis added).

Preferred Unlimited of Holmdel, LP, Preferred Unlimited

Crawfords Corner Road, LP  and Preferred Unlimited, Inc. during

discovery.  Indeed, courts routinely permit parties to engage in

discovery prior to granting a motion to dismiss, finding that a

ruling on the fact-sensitive inquiries inherent in a veil

piercing/alter ego analysis is premature.

     For example, in <u>McGovern</u>, the Court rejected the

defendants' argument that plaintiff's allegations were

insufficient to sustain a claim because the plaintiff had merely

asserted conclusions of law in attempting to plead an alter ego

theory of liability.  2004 U.S. Dist. LEXIS 1985.  In denying

the motion to dismiss, the Court stated:

> <u>Accordingly, we believe it would be
> premature to dismiss Plaintiff's alter ego
> claim at this stage in the instant case.
> Defendants are correct that Plaintiff states
> a conclusion of law when she alleges that
> Jack D's and the DiMaios are alter egos of
> each other.</u> However, we believe her
> allegation that the actions of one are
> attributable to the other constitutes
> sufficient notice pleading to withstand a
> Motion to Dismiss. <u>Although we have some
> doubts about Plaintiff's alter ego claim, it
> would be premature to dismiss the claims
> against the DiMaios without allowing
> Plaintiff to proceed with discovery</u>.

<u>Id.</u> at * 11-12 (emphasis added). <u>See also</u> <u>Ginley v. E.B. Mahoney</u>

<u>Builders, Inc.</u>, 2004 U.S. Dist. LEXIS 19336, *7 (E.D. Pa. Sept.

23, 2004) (No. 04-1986) ("In order to withstand this motion,

Plaintiff must set forth the conduct which Defendant Mahoney

allegedly engaged in that would bring his actions within the
parameters of a cause of action based on a theory of piercing
the corporate veil. . . .  Although this Court has some doubts
about Plaintiffs' claims under this theory, it would be
premature to dismiss them without allowing Plaintiff to proceed
with discovery.")  CGB Occupational Therapy, Inc. v.
RHA/Pennslyvania Nursing Homes, Inc., 2002 U.S. Dist. LEXIS 3359
(E.D. Pa. Feb. 26, 2002) (No. 00-4918) (denying motion to
dismiss piercing the corporate veil claim, noting that "it is
unclear why defendants have requested this Court to instruct
plaintiff to plead this section with more definitiveness [and]
Plaintiff appears to have alleged this claim as clearly as
possible given the amount of discovery which has taken place at
this point").

Here, dismissal of Lucent's Third-Party Complaint against
the Preferred entities would be similarly premature,
particularly in light of the fact that the parties have
conducted virtually no discovery and that information relating
to the Preferred entities finances is within their control.[7]
Accordingly, Preferred's motion must be denied.

---

[7]     In Orion Power Midwest, L.P. v. Am. Coal Sales Co., the
Court was persuaded by the fact that the "information about [the
subject entity's] financial condition is solely within the
possession of Defendants." 2007 U.S. Dist. LEXIS 86106, *8
(W.D. Pa. Nov. 21, 2007) (No. 2:05-555).  As a result, the Court
denied a motion to dismiss plaintiff's veil piercing claims,

Finally, and as noted above, Lucent's allegations against the Preferred entities are not dependent upon the viability of Lucent's piercing the corporate veil/alter ego allegations, but can be sustained on the independent claims relating to the direct contractual responsibilities assumed by these Preferred entities.  Nevertheless, if the Court determines that the piercing the corporate veil/alter ego allegations against the Preferred entities are not sufficient, Lucent respectfully submits that it is entitled to amend its pleading.  See Nassau Constr. Co., 2008 U.S. Dist. LEXIS 41631, *14 (although granting motion to dismiss piercing the corporate veil claim, permitting plaintiff to amend and noting that "the Third Circuit has repeatedly held that district court's should not grant a 12(b)(6) motion without providing a plaintiff with an opportunity to amend its complaint") (citation omitted); Shenango Inc. v. Am. Coal Sales Co., 2007 U.S. Dist. LEXIS 58110, *14 (W.D. Pa. Aug. 9, 2007) (No. 2:06-149) (granting motion to dismiss veil-piercing claim, but permitting plaintiff to amend and stating: "If a complaint is subject to Rule 12(b)(6) dismissal, a . . . district court must provide the plaintiff with this opportunity even if the plaintiff does not

---

stating: "Ultimately, the question of whether the corporate veil should be pierced will be fact-intensive and the Court cannot conclude, at this stage of the litigation, that Plaintiff should be barred from proceeding on its claims." Id.

seek leave to amend.  Even if a plaintiff does not seek leave to amend the complaint after the defendant moves for dismissal . . . the Court must inform the plaintiff that it has leave to amend the complaint within a set period of time.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Lucent respectfully requests
that the Court deny Preferred's motion to dismiss.

Dated: November 17, 2008     By: s/Frederick W. Alworth
                                  Frederick Alworth
                                  William P. Deni, Jr.
                                  GIBBONS P.C.
                                  One Gateway Center
                                  Newark, New Jersey 07102-5310
                                  (973) 596-4500
                                  Attorneys for Defendants/Third
                                  Party Plaintiffs