NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PREFERRED REAL ESTATE INVESTMENTS, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>LUCENT TECHNOLOGIES, INC. and LTI NJ FINANCE LLC,<br><br>   Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 07-cv-5374 (DMC) |
| LUCENT TECHNOLOGIES, INC. and LTI NJ FINANCE LLC,<br><br>   Third-Party Plaintiffs,<br><br>   v.<br><br>PREFERRED REAL ESTATE INVESTMENTS, LLC, f/k/a PREFERRED UNLIMITED INC., f/k/a PREFERRED REAL ESTATE INVESTMENTS, INC., PREFERRED UNLIMITED OF HOLMDEL LP, and PREFERRED UNLIMITED CRAWFORDS CORNER ROAD, LP,<br><br>   Third-Party Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

  This matter comes before the Court upon motions by Plaintiff and Third-Party Defendants Preferred Real Estate Investments, LLC ("PREI"), Preferred Real Estate Investments, Inc., Preferred

Unlimited of Holmdel LP, and Preferred Unlimited Crawfords Corner Road, LP, (the "Preferred Entities") to dismiss Defendants and Third-Party Plaintiffs Lucent Technologies, Inc. and LTI NJ Finance LLC,'s ("Defendants") Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6). After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that PREI and the Preferred Entities' motion to dismiss is **granted**.

## I.     BACKGROUND

This matter arises from the sale of a 450 acre commercial complex located at 101 Crawfords Corner Road, Holmdel, New Jersey (the "Property"). This Property was previously owned by Lucent Technologies, Inc. and LTI NJ Finance LLC ("Lucent") and served as one of Lucent's main business headquarters in the United States. Lucent moved its operations away from the Property approximately two years ago and the facility remains mostly unused today. Several Tenants remain on a small portion of the property. Tyco Telecommunications (US) Inc. ("Tyco") is one of the remaining Tenants. Tyco leases approximately three thousand square feet of space in a remote building that is separate from the property's main office building.

After vacating the Property, Lucent began negotiating the sale of the Property to PREI. Lucent and PREI entered into a Purchase and Sale Agreement (the "Agreement") for the Property on March 22, 2006. Among other things, the Agreement explicitly provided that Lucent's failure to satisfy any of the conditions precedent would excuse PREI from its obligation to close the sale. PREI purchased the property for $72 million. After the Agreement was executed, the purchase price and the closing date were changed pursuant to amendments to the Agreement.

The fifteenth amendment to the Agreement states "it shall be a condition precedent to [PREI's] obligation to purchase the Property that [Lucent] obtain from Tyco and deliver to [PREI] at closing the estoppel certificate described in Section 5.1(n) and attached as Exhibit N-2 to the

Agreement." The closing date was again moved from September 14, 2007, to October 26, 2007. Lucent did not produce the certificate by October 26, 2007, and on November 5, 2007, PREI terminated the Agreement pursuant to the fifteenth amendment. In response, Lucent rejected PREI's termination of the Agreement and refused to refund $5 million on deposit, as well as progress payments made by PREI.

PREI initiated this action on November 8, 2007, seeking recovery of its deposits, progress payments, and other associated expenses. PREI later amended the Complaint to add, among other things, a claim for attachment of the Property because Lucent allegedly was having financial problems. On February 28, 2008, Lucent filed an Answer and asserted various Counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment against PREI. PREI answered Lucent's Counterclaims on March 19, 2008. On September 30, 2008, after PREI filed its Answer to the Counterclaims, Lucent filed an Amended Answer to the Amended Complaint, Separate Defenses, Counterclaims and Third Party Complaint. According to PREI, the only substantive difference between Lucent's original filing and its amended one, is the addition of the Preferred Entities and introductory paragraphs identifying and describing each. Plaintiff alleges that PREI and the Preferred Entities blur corporate formalities by sharing common management, operating space, funding sources, supplies, and materials.

## II.  STANDARD OF REVIEW

### A.  FED. R. CIV. P. 12(b)(6)

When deciding a motion to dismiss pursuant FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion, a court may consider only

the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. Pension Benefit Guar. Corp. V. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

While under the liberal notice pleading standard a party is not required to plead facts sufficient to prove its case, there still must be an underlying claim for relief before the court. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir 2004). Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). A pleading that offers labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In Twombly, the Supreme Court established new language for interpreting the pleading standard when it held that a plaintiff was required to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. The "[f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level." Id. at 555. Nonetheless, the Supreme Court specified that there is no heightened standard of fact pleading or requirement to plead specifics. Id. at 570. The Supreme Court explains:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 129 S. Ct. 1937 (U.S. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57, 570 (2007).

**III.    DISCUSSION**

Lucent seeks relief from PREI and the Preferred Entities pursuant to its claim that PREI breached the Agreement and that all of the Preferred Entities are all responsible because they were all intimately involved in the sale and purchase of the Property. Lucent further seeks relief from all of the Preferred Entities based on the argument that PREI and the Preferred Entities blur corporate forms, which is essentially a claim for vicarious liability predicated on piercing the corporate veil.

**A.    Lucent's Direct Claims Against the Preferred Entities**

Lucent asserts that PREI and the Preferred Entities are responsible for PREI's contractual and other legal obligations created by the Agreement. Lucent admits that PREI is the only signatory to the Agreement but argues that at all relevant times the Preferred Entities were involved in the purchase of the Property and were part of the contractual relationship created by the Agreement. In support of this position, Lucent references Preferred Unlimited, Inc.'s agreement to pay $200,000 a month to extend the closing date for the purchase of the Property; a letter from an attorney of one of the Preferred Entities who Lucent claims was acting as an agent for PREI; the Property's closing financial statement which identifed Preferred Unlimited of Holmdel, L.P. as the buyer by assignment; a draft deed to the property listing LTI NJ Finance LLC as the grantor and Preferred Unlimited of Holmdel, L.P. as the grantee; a letter from counsel to LTI NJ Finance LLC to the law firm of Cozen O'Connor ("Cozen") addressing Cozen's request for a conflict waiver so that Cozen could represent PREI and its affiliates in environmental concerns related to the acquisition of the Property; a letter requesting "Seller's approval to the assignment of Purchaser's rights under the Agreement to Preferred Unlimited of Holmdel ("Assignee")" detailing that Assignee's sole general partner is Preferred Unlimited of Holmdel, Inc. and that both companies are affiliated with and controlled by Purchaser (PREI) and Principals; and Preferred Unlimited, Inc.'s website that identifies

the Property as a "milestone" project.

"[N]on-parties to contracts cannot be held responsible for a breach." <u>D.R. Horton Inc. v. Dynastar Dev., L.L.C.</u>, No. 1808-00, 2005 WL 1939778, at *17 (App. Div. 2005) (citing <u>FDIC Deposit Ins. Corp. v. Bathgate</u>, 27 F.3d 850, 876 (3d Cir.1994).  The proofs listed above all demonstrate that at least some of the Preferred Entities were most likely going to benefit from PREI's purchase of the Property, however, nothing presented changes the fact that only PREI was a party to the contract.  Had there been a written agreement to assign PREI's rights and interests to Preferred Unlimited of Holmdel then Holmdel and not PREI would be a party to the contract. Nonetheless, it appears that an assignment had not occurred, and intent to assign is not enough. Therefore, Lucent cannot substantiate direct claims against the Preferred Entities.

### B.     Lucent's Vicarious Claims Against the Preferred Entities

Lucent contends that PREI and the Preferred Entities are alter egos of one another and therefore, responsible for PREI's alleged breach of the Agreement.  In order to substantiate this argument Lucent must establish that piercing the corporate veil is warranted.  As a preliminary matter the Court must determine which state veil piercing law will apply to this case.  Defendants rely on New Jersey law while Lucent argues that Pennsylvania law applies because PREI and the Preferred Entities are all incorporated in Pennsylvania. "The apparent weight of authority agrees that veil piercing analysis is governed by the law of the state of formation." <u>D.R. Horton</u>, 2005 WL 1939778 at *20.

Pennsylvania law takes a broad approach to piercing the corporate veil.  As the Court stated in <u>McGovern v. Jack D's, Inc.</u>:

> Under Pennsylvania law, there is no specific test for determining whether the corporate veil may be pierced. Rather, the courts employ a totality of the circumstances test. Using this test, Pennsylvania courts have generally been willing

>  to pierce the corporate veil whenever necessary to prevent injustice. Such a broad standard has invited the consideration of a variety of factors and theories when determining whether to pierce the corporate veil.

2004 U.S. Dist. LEXIS 1985, *3-4 (E.D.Pa. Feb. 3, 2004) (No. 03- 5547) (internal quotation marks and citations omitted), modified on other grounds, 2004 U.S. Dist. LEXIS 4326 (E.D. Pa. Feb. 25, 2004); In re Mass, 178 B.R. 626, 630 (M.D.Pa. 1995) (internal citations and quotation marks omitted) ("Pennsylvania courts have recognized that piercing the corporate veil is not limited to situations were such is necessary to prevent a fraud. Instead, the corporate entity will be disregarded whenever justice or public policy require and where rights of innocent parties are not prejudiced.")

Pennsylvania "courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder." Village at Camelback Property Owners Assn. Inc. v. Carr, 371 Pa.Super. 452, 461 (Pa. Super. Ct. 1988) (internal citations omitted). The inquire focuses on "whether corporate formalities have been observed and corporate records kept, whether officers and directors other than the dominant shareholder himself actually function, and whether the dominant shareholder has used the assets of the corporation as if they were his own." Id.

Here, Lucent alleges that the Preferred Entities have common ownership, a common principal place of business, use common e-mail addresses, e-mail signatures, and corporate letterhead. In addition, Lucent alleges that PREI utilized the funds of principals of the Preferred Entities to make payments to Lucent required under the terms of the Purchase Agreement.

Lucent argues that its allegation concerning PREI's utilization of funds of principals of the Preferred Entities to make payments is enough for the Complaint to withstand dismissal based on Motorola, Inc. v. Airdesk, Inc., 2005 U.S. Dist. LEXIS 6601, *5 (E.D. Pa. Apr. 15, 2005). In

Motorola, the Court denied a motion to dismiss because of allegations in the complaint concerning "intermingling of corporate and personal funds and the use of Airdesk funds for personal purposes." Id. The Court found this to be "sufficient to allow a claim for piercing the corporate veil to proceed." Id. Lucent, however, has not pled that PREI has intermingled funds with an individual for the benefit of that individual. Lucent alleges that principals of the Preferred Entities have used personal funds to facilitate PREI's purchase of the property. This however, does not rise to the level of intermingling of funds, indeed it may simply be investment.

      Lucent alleges no facts suggesting that piercing the corporate veil is warranted here. Lucent presents no injustice that will result if the Preferred Entities are not held responsible for PREI's actions. Lucent does not suggest that PREI has used corporate forms to perpetrate a fraud or has or would use the Preferred Entities to avoid payment of a judgment should Lucent succeed. Lucent does not even suggest a public policy argument in support of its position that piercing the corporate veil is appropriate in this instance. The principal allegation in support of piercing the corporate veil is the letter in which PREI requests that it be allowed to assign its obligations under the Agreement. In the letter PREI's counsel wrote that "Assignee [Preferred Unlimited Holmdel, LP,] and General Partner are affiliates of and controlled by Purchaser [PREI] and Principals." First it must be noted that Lucent does not allege that it agreed to the assignment which negates the fact that the assignment was completed. Even if there was an assignment, it would mean that the assignee alone and not the other Preferred Entities were directly liable for any claims arising from the contract. This notwithstanding, PREI's counsel's letter clearly indicates that PREI did not try to hide or perpetrate an injustice by using corporate forms, but rather PREI was up front and open about its relationship with Preferred Unlimited Holmdel, LP.

      Lucent further argues that it should be allowed to conduct discovery on the issue of piercing

the corporate veil before a determination is made. Allowing discovery might be appropriate if the principal question was whether the relationships between the Preferred Entities support the requisite finding of domination or control. This is not the issue here. As identified by Lucent, Pennsylvania courts pierce the corporate veil whenever necessary to prevent injustice or public policy so requires. In the instant case there is no injustice to prevent and Lucent has not raised a public policy argument. Without piercing the corporate veil, Lucent can still pursue its claims against PREI, the party with whom it contracted. Since Lucent has not alleged facts which suggest that piercing the corporate veil is appropriate, Lucent has not established justification for holding all of the Preferred Entities liable.

**IV.    CONCLUSION**

For the reasons stated, this Court finds that the Preferred Entities' motion to dismiss is **granted**. An appropriate Order accompanies this Opinion.

      S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:   June   18  , 2009
Orig.:  Clerk
cc:     Counsel of Record
        The Honorable Mark Falk, U.S.M.J.
        File